**DURKIN, Secretary of Labor, United States Department of Labor, v. STEINER et al.**

Civ. A. No. 1488.

United States District Court
M. D. Tennessee, Nashville Division.

Feb. 25, 1953.

David V. Manker and Virginia B. Cowan, Nashville, Tenn., for plaintiff.

Louis Leftwich, Jr., (of Denney, Leftwich & Glasgow), Nashville, Tenn., for defendants.

WILKIN, District Judge.

This case was submitted on the pleadings, evidence, stipulations, and briefs.

The complaint alleges violation by the defendants of the Fair Labor Standards Act, as amended by the act approved October 26, 1949, Title 29, U.S.C.A. § 201 et seq., and seeks an order compelling defendants to pay their employees for time spent in changing clothes before each regular workshift and for time spent in showering and changing clothes after each workshift.

The defendants contend that under the applicable statutes and decisions of the courts they are not obligated to pay for time spent in changing clothes or showering at the beginning or the end of the workshift, since such time has not been made com-

pensable by express contract or custom. They say that they are expressly relieved from liability for such clothes-change and wash-up time by the provisions of Title 29 U.S.C.A. §§ 252 and 254, Portal-to-Portal Act, 1947.

The plaintiff concedes that in many cases clothes-changing and showering may properly be characterized as preliminary or postliminary to the principal activity or regular work of the employees, and as such not compensable. But he insists that when the clothes-changing and showering are made necessary by the character of the employer's work and are an indispensable part of the employee's duty, then the time spent in such activities is necessarily a part of "hours worked" and subject to the provisions of the Fair Labor Standards Act. Plaintiff insists that the intent of Congress to exempt such necessary and essential activities from the provisions of the Portal-to-Portal Act regarding preliminary and postliminary activities is apparent in the legislative history of that Act and particularly in the provisions of the enactment by Congress, in 1949 (two years after the Portal Act), of section 3(o), of the Fair Labor Standards Act:

> "In determining for the purposes of sections 6 and 7 the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

■ Plaintiff argues that the exclusion by Congress of "time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time * * * by the express terms of * * * a bona fide collective-bargaining agreement" is clear evidence of the recognition by Congress that such changing and washing might be included in measured working time when not excluded by agreement. And that

argument seems sound. If Congress had intended to exclude all time spent in washing and changing clothes except when such time is included by contract (as defendants claim) it no doubt would have said so.

■ If it was the legislative intent that time spent in changing clothes and bathing at the beginning and the end of the workday should be treated as work time when such changing and washing is a necessary and integral part of the employer's business, as seems clear from the legislative history, then this case comes within that intention. If there is ever an instance when clothes-changing and washing is an indispensable part of manufacture, the making of automotive wet storage batteries presents such instance.

The storage battery industry engaged in by the defendants makes necessary the extensive use of lead, lead compounds and sulphuric acid. The effect of sulphuric acid on the skin is very irritating and frequently causes severe burns. It is necessary for employees to have opportunity for frequent change of clothing and ready access to showers or water faucets. Sulphuric acid on clothing causes disintegration or rapid deterioration. While the deleterious effects of sulphuric acid are more immediate, the evil effect of lead and lead compounds is greater and more general.

Lead dust and lead fumes are prevalent in storage battery factories. Manufacturers try to minimize the danger by ventilation, but the industrial and medical experts expressed the opinion that ventilation is not sufficient to avoid the danger of lead poisoning. In their opinion safe operation requires removal of clothing and showering at the end of the work period. The medical experts were in agreement that the danger of lead poisoning by absorption through the skin is slight and very remote. The danger from ingestion and inhalation however is very great.

The testimony was quite clear that lead dust and lead fumes would attach to the skin and clothing and hair of employees. It was the opinion of all expert witnesses that safe operation required removal of

clothing and showering of the body before leaving the factory. If that were not done some of the particles of lead on the clothing, in the hair, or on the skin would be inhaled and ingested. Change of clothing and showering by employees before leaving the factory was considered necessary by the industrial and medical experts not only for the safety of the employees but for the best interest of the employer and the general welfare of the public. The law of Tennessee and the regulations of the industrial insurer of the defendants both require that the manufacturer afford facilities for changing clothes and showering.

The testimony of the employees and their foremen revealed a general understanding that lead oxide was on the floor and in the air and on the plates which employees handled, and that workmen "should try to get it off them before they went home because it was dangerous." Defendants admitted that a majority of their employees work with lead, lead compounds or sulphuric acid or other chemicals, and that most of their employees change their clothes before and after each work shift, and that most of them shower at the end of the work shift. They said, however, that there were some employees who did not change clothes and did not take showers. It would of course be unnecessary for employees to change clothes or shower if they had not been subjected to poisonous chemicals, and if such unexposed employees changed clothes or showered the time spent by them in doing so would not be considered "hours worked."

The general requirement of bathing and clothes-changing in storage battery plants is not prompted by mere desire for cleanliness or personal hygiene. Those considerations apply to all industry, and time spent for such reasons is generally considered preliminary and postliminary to the actual working period. But the changing and bathing required of employees in a storage battery factory is occasioned by the poisonous substances used in the manufacturing process and is therefore an integral part of that process and should be considered a part of the day's work.

The Court finds that ten minutes at the beginning of the work shift is sufficient time for change of clothes and that twenty minutes at the end of the work shift is a reasonable period for change of clothes and shower. The Court further finds that such time is not so little or slight as to be beyond the concern of the law. The rule *de minimis non curat lex* does not apply.

Owing to the honest and justifiable difference of opinion regarding the interpretation of the law, the judgment in this case should have no retroactive effect; the liability of the defendants can hardly be said to have existed before the applicable statutes were given an authoritative interpretation, and employees who have acquiesced in the action of employers should be estopped from asserting any claims based on conduct which by silence and inaction they condoned.

Furthermore, the determination of the issue in this case should as much as possible have uniform effect upon all manufacturers engaged in the same business as that of defendants. If an appeal is taken in this case, the judgment and decree should, of course, not become operative unless and until affirmed. And in no event shall the injunction issued in this case be effective until after ninety days from its date, and then only on the condition that the plaintiff should in the meantime have notified all manufacturers of automotive-type wet storage batteries within the competitive range of defendants that the law as determined in this case will be uniformly and equably enforced. The plaintiff who seeks equity should act equitably in the performance of his public trust that the law may be made to bear alike on all factories within the field of competition.

The manufacture of wet storage batteries is hazardous work and the expense of necessary precautions against such hazards should be added to the cost of the product and ultimately paid by those who use such batteries.

Counsel for plaintiff may prepare an order of injunction in accordance with this opinion.