**Robert B. REICH, Secretary of the United States Department of Labor, Plaintiff–Appellant/Cross–Appellee,**

v.

**IBP, INC., Defendant–Appellee/Cross–Appellant,**

**American Meat Institute and National Broiler Council, Amici Curiae.**

Nos. 93–3204, 93–3205.

United States Court of Appeals, Tenth Circuit.

Oct. 25, 1994.

Paul L. Frieden, Atty. (Thomas S. Williamson, Jr., Sol. of Labor, Monica Gallagher, Associate Sol., and William J. Stone, Counsel for Appellate Litigation, with him, on the briefs), U.S. Dept. of Labor, Washington, DC, for plaintiff-appellant/cross-appellee.

Jack L. Whitacre (David L. Wing with him, on the brief) of Spencer Fane Britt & Browne, Kansas City, MO, for defendant-appellee/cross-appellant.

Gary Jay Kushner and Peter W. Tredick of Hogan & Hartson, Washington, DC, on the brief, for amici curiae.

Before MOORE and McKAY, Circuit Judges, and PARKER,* District Judge.

McKAY, Circuit Judge.

This case involves an action by the Secretary of Labor seeking to enforce the overtime and recordkeeping provisions under § 17 of the Fair Labor Standards Act of 1938 (FLSA), codified as amended at 29 U.S.C. § 201 *et seq.* (1988), against Iowa Beef Packers Inc. (IBP), a company engaged in the meat processing industry.

Between April 1, 1986 and August 1, 1988, IBP was engaged in the slaughter, processing, and packing of beef and pork in numerous locations throughout the Midwest. Because of the nature of the work, company regulations, and federal regulations issued by OSHA and the USDA Food Safety and Inspection Service, employees were required to wear certain garments and safety equipment on the job. Regulations or other practical considerations necessitated that virtually all safety equipment and garments be kept on the premises of the IBP plant, and the workers put the clothing and equipment on in the morning and left it behind at the end of the day.

According to the district court's findings of fact, *Reich v. IBP, Inc.,* 820 F.Supp. 1315 (D.Kan.1993), there were two general categories of "hourly production workers: 1) those who used knives or other meat cutting utensils in the performance of their jobs; and 2) those who did not use knives or other cutting utensils." 820 F.Supp. at 1319. The first category of workers required special safety equipment ("personal protective gear") consisting of some combination of: "a mesh apron, a plastic belly guard, mesh sleeves or plastic arm guards, wrist wraps, mesh gloves, rubber gloves, 'polar sleeves,' rubber boots, a chain belt, a weight belt, a scabbard, and shin guards." *Id.* The second category of employees wore hard hats, earplugs, safety

---

* Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

footwear, and safety eyewear. In addition, for sanitary reasons all employees wore clean white outergarments while working, which were usually left overnight to be laundered. Thus, the employees of IBP spent some non-trivial amount of time each day picking up, etc.

The Secretary contends that the time and effort invested by employees of IBP in picking up, putting on, taking off, cleaning, and dropping off or storing the various safety and sanitary equipment before and after their regular work shifts constitute compensable working time within the meaning of the FLSA. IBP claims that these tasks instead fall within the rubric of noncompensable preliminary and postliminary activities as defined by the Portal-to-Portal Act of 1947, 29 U.S.C. § 254 (the "Portal Act") (1988). The district court agreed partially with the Secretary and partially with IBP, and both parties appealed.

A further issue is whether the trial court's determination that some of the time at issue was "hours worked" under the FLSA requires retroactive application in the form of a restitutionary injunction. IBP has presented what the trial court characterized as a "compelling argument" that such an injunction should not be granted. *See* 820 F.Supp. at 1328. Nevertheless, the trial court initially granted the injunction; subsequently the court vacated the injunction and certified for appeal the question of whether retroactive application is required.

■ We agree with the district court's determination on the issues of compensable working time and on the initial grant of the restitutionary injunction for substantially the reasons set forth by the district court. However, some elaboration of one issue is necessary.

The trial court found that, for the knife-wielding workers,

> [t]he donning of personal protective gear unique to the production job performed by the employee was compensable ... because the wearing of this personal protective equipment was so closely related to the performance of the principal activity they were hired to perform that it became an integral and indispensable part of that principal activity.

*Id.* at 1326. In contrast, for the non-knife-using workers, "the wearing of standard protective gear which was not uniquely required by the dangers of the various production jobs being performed was not compensable." *Id.* at 1326–27 n. 16. The reasons given for not compensating the employees for this category of safety gear (hard hats, earplugs, safety footwear, and safety eyewear) were that "[s]uch items are uniformly required throughout many industries" and that such "items were not so uniquely and closely related to the dangers inherent in meat production to make the wearing them [sic] an integral and indispensable part of the meat production workers' jobs." *Id.*

Although we agree with the district court's conclusion with respect to compensability, we do so for slightly different reasons. We understand the court's reluctance to find that these workers should be compensated for putting on a hard hat, safety glasses, earplugs, and safety shoes. Such a holding would open the door to lawsuits from every industry where such equipment is used, from laboratories to construction sites. However, the fact that such equipment is well-suited to many work environments does not make it any less integral or indispensable to these particular workers than the more specialized gear. In fact, the same reasons supporting the finding of indispensability and integrality for the unique equipment (*i.e.* company, OSHA, and Department of Agriculture regulations requiring such items and the health, safety, and cost benefits to the company of the employees wearing the items) apply with equal force to the "standard" equipment.

A better explanation for the non-compensability of the donning and doffing of the latter items is that it is not work within the meaning of the FLSA. Work is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). While the use of the standard

safety equipment may have met the second prong of this test, it fails the first.

The placement of a pair of safety glasses, a pair of earplugs and a hard hat into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration. Such items can easily be carried or worn to and from work and can be placed, removed, or replaced while on the move or while one's attention is focused on other things. Similarly, safety shoes can be worn to and from work and require little or no additional effort to put on as compared to most other shoes. Thus, although essential to the job, and required by the employer, any time spent on these items is not work.[1]

On the other hand, the donning, doffing, and cleaning of the special protective gear used by the knife-workers at the IBP plants was properly found to be compensable. These items are heavy and cumbersome, and it requires physical exertion, time, and a modicum of concentration to put them on securely and properly. These actions differ in kind, not simply degree, from the mere act of dressing. Thus, in addition to being essential to their work, putting on the special protective equipment is work itself, and is compensable. Although putting on just one or two items of extra gear could be *de minimis,* the necessity to combine several items coupled with the need to regularly and thoroughly clean the equipment creates measurable additional working time. In fact, previous decisions indicate that as little as ten minutes of working time goes beyond the level of *de minimis* and triggers the FLSA. *Durkin v. Steiner,* 111 F.Supp. 546 (M.D.Tenn.1953), *aff'd sub nom., Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956).

■ Unlike the time spent with personal safety equipment, the time utilized donning, removing, picking up, and depositing for laundering sanitary outergarments is essentially time used to change clothes and thus is preliminary and postliminary within the meaning of the Portal Act. Furthermore, although required and of some value to the employer, the outergarments are primarily for the benefit of the employee, and thus, unlike the safety equipment, are not integral and indispensable to IBP.

■ Having properly found that the IBP employees had not been paid for time worked, the court then considered whether the "good faith reliance" defense of 29 U.S.C. § 259 applied. The court correctly concluded that this defense was not availing because IBP had not relied on a written opinion issued by the Administrator of the Wage and Hour Division of the Department of Labor or upon another valid basis. Thus, the district court was all but required to issue an injunction against IBP from withholding back pay, despite IBP's apparent good faith. "An employer's good faith is not grounds for the denial of a restitutionary injunction since the remedy is not designed to penalize the employer, but rather to compensate the employees for earned wages which have not been paid." *Donovan v. Grantham,* 690 F.2d 453, 456–57 (5th Cir.1982); *see also Donovan v. Brown Equip. & Serv. Tools, Inc.,* 666 F.2d 148, 157 (5th Cir.1982).

■ We believe the Fifth Circuit has enunciated the proper standard on this issue:

> While a restitutionary injunction need not issue as a matter of course upon a finding of past wages due, the district court's discretion to deny the injunction where it makes such a finding is severely limited and must be exercised with an eye to the purposes of the act.

*Grantham,* 690 F.2d at 456.

> Once a finding of past due wages is made, however, the district court's discretion to refuse the Secretary's request for a restitutionary injunction is limited, and must be tempered by considering whether the prerequisites for this remedy have been met and the policy reasons underlying Congress' enactment of the legislation have been fulfilled.

---

1. It could also be said that the time spent putting on and taking off these items is *de minimis* as a matter of law, although it is more properly considered not work at all. Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature.

*Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 197 (5th Cir.1983); *see also Dunlop v. Gray–Goto, Inc.,* 528 F.2d 792, 796 (10th Cir.1976); *Wirtz v. Malthor, Inc.,* 391 F.2d 1, 3 (9th Cir.1968).

IBP has argued that the district court has discretion to deny retroactive effect where there has been an "honest and justifiable difference of opinion" regarding the application of the FLSA and has petitioned the court to limit any award to prospective relief only, relying on *Durkin,* 111 F.Supp. at 548. The rationale of denying back pay in *Durkin* was based in part on the outmoded view that "employees who have acquiesced in the action of employers should be estopped from asserting any claims based on conduct which by silence and inaction they condoned." *Id.* Furthermore, the *Durkin* opinion ignored the fact that because FLSA cases are necessarily decided on the basis of specific fact situations, there is unlikely to be precise prior precedent in any given case; therefore, in any close case, there will be room for an "honest and justifiable difference of opinion regarding the interpretation of the law." *Id.* We cannot endorse this reading of the FLSA.

Where there is more than just an honest difference of opinion, such as where a judicial interpretation overrules previously issued administrative opinions, Congress has provided the employer with a defense: sections 9 and 10 of the Portal Act, 29 U.S.C. §§ 258 and 259. But by limiting this defense to good faith reliance on a written opinion, Congress has put the risk of a close case on the employer.

■ Where all the elements of the Portal Act defense are not present, the district court must interpret the FLSA liberally to effectuate the intent of Congress: to insure that hourly workers are fully compensated for their labors. When it initially granted the injunction, the district court considered the underlying policies of the FLSA and weighed the equities following our decision in *Shultz v. Mistletoe Express Serv., Inc.,* 434 F.2d 1267 (10th Cir.1970) (Where "employees are entitled to wages which they have not received[,] ... [t]he equities lie with them.") The district court's vacation of the restitutionary injunction was "an abuse of its small residue of discretion." *Brown Equipment,* 666 F.2d at 157. Thus, the restitutionary injunction should be reinstated.

■ Despite having found that putting on, cleaning, and taking off the unique personal protective gear was a compensable work activity, the district court nevertheless declined to hold that these actions were the first and last principal activities of the workday which would commence and toll the running of the timeclock, including "wait and walk time." The district court found that there existed considerable flexibility and personal discretion with regard to the time and speed that these activities took place. For example, the court noted that

> [u]pon arrival, ... employees would either pick up or put on part or all of their personal protective equipment and their whites. Others would go to the restroom or the cafeteria and then return to their locker to dress or pick up their gear. Still others would pick up their gear, proceed to the cafeteria and then on to the work station.

820 F.Supp. at 1321. Similar differences in personal routines occurred at the end of the shift. *Id.* Given these circumstances, the district court concluded that the workers should be paid on the basis of a reasonable time to conduct these activities, not to include "wait and walk time," rather than the actual time taken. 820 F.Supp. at 1328. We believe reasonable time is an appropriate measure in this case.

We affirm the district court's holding that time spent donning, removing, and cleaning the "unique" personal protective gear worn by IBP production employees who used knives was compensable "hours worked" under the FLSA. We affirm the district court's holding that time spent donning, removing, picking up, and depositing for laundering standard safety equipment and sanitary outergarments was not "hours worked" under the FLSA. We affirm the use of "reasonable time" and the denial of "wait and walk time" related to the above issues. We direct the district court to reinstate the restitutionary injunction and remand for further

# 1128

proceedings not inconsistent with this opinion.

AFFIRMED and REMANDED.