Richard BEJIL, et al., Plaintiffs,

v.

ETHICON, INC., Defendant.

Carmen Aguirre, et al., Plaintiffs,

v.

Ethicon, Inc., Defendant.

Nos. 6:99–CV–035–C, 6:99–CV–086–C.

United States District Court,
N.D. Texas,
San Angelo Division.

July 31, 2000.

---

Philip R Russ, Attorney at Law, Law Office of Philip R Russ, Amarillo, TX, John L Lesly, Attorney at Law, Law Office of John L Lesly, Amarillo, TX, for Richard Bejil, Jr, Damien Cooper, Gwen Harris, Deborah K Juarez, Mary Lou Garcia, Christina Munoz, plaintiffs.

Stephen Fred Fink, Attorney at Law, Bennett W Cervin, Attorney at Law, Thompson & Knight, Dallas, TX, Regina C Williams, Attorney at Law, Thompson & Knight, Austin, TX, for Ethicon Inc, defendants.

## ORDER

CUMMINGS, District Judge.

On this day the Court considered Plaintiffs' Richard Bejil, et al., and Plaintiffs' Carmen Aguirre, et al. (collectively, "Plaintiffs") Partial Motion for Summary Judgment on the Basis of Liability in the above styled and consolidated actions; Plaintiffs' Motion was filed on January 13, 2000, to which Defendant, Ethicon, Inc. ("Ethicon") filed a Response on February 15, 2000. Also before the Court is Ethicon's Motion for Summary Judgment, filed on January 18, 2000, to which Plaintiffs filed a Response on February 14, 2000. After carefully considering all relevant arguments and evidence, the Court GRANTS Ethicon's Motion for Summary Judgment, and DENIES the Plaintiffs' Motion for Partial Summary Judgment on the Basis of Liability.

## I.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996).

## II.

### BACKGROUND

The Court bases its decision of the parties' cross-motions for summary judgment on the following facts:

1. Plaintiffs are employees of Ethicon at its San Angelo, Texas, facilities.

2. Ethicon's San Angelo operations produce a wide range of "absorbable" surgical sutures and suture sets.

3. Ethicon began to require its employees in all of its facilities to wear specified apparel items over their clothes and hair somewhere between 1991 and 1995.

4. The specified apparel consists of a lab coat, "dedicated shoes,"[1] a hair covering, and a facial hair cover for employees with a beard or mustache.

5. Ethicon's employees are not allowed into their working area without wearing these garments; employees must likewise remove the garments when they leave the working area.

6. Ethicon's purpose for requiring the apparel was to minimize the potential "bioload" (i.e., the quantity of biological materials) that Ethicon's product is exposed to during assembly and packaging, and as part of its pursuit of ISO 9000 certification, which in mid–1998 became necessary for the company to sell goods in Europe.

7. A study conducted for Ethicon found that the amount of time involved in the employees' process of dressing and undressing with these outergarments ranged from 0.68 minute to 3.09 minutes, depending on the department and facility in which the employee works.

8. A study conducted for the Plaintiffs found that the amount of time involved in dressing and undressing with these outergarments ranged from 1.65 minutes to 3.82 minutes, depending on the department and facility in which the employee works.

9. Ethicon has never compensated its employees at the three San Angelo facilities for the time they spend gowning pre-shift and degowning post-shift.

10. Ethicon's employees are compensated for a 36–minute lunch break, with six minutes of that paid time to be used for gowning and degowning.

11. Ethicon provides a weekly report of the hours worked by each employee. The report is located in the employee cafeteria, and employees are able to report discrepancies between the time they actually worked and the reported time.

12. No employee has ever reported to Ethicon's Human Resource Business Partner at its San Angelo plant that Ethicon's system of compensating employees for a 36–minute lunch period forced the employee to lose some lunch time due to gowning and degowning.

13. Ethicon's practice of not paying for gowning and degowning time before and after each employee's shift has received considerable attention from the union that represents Ethicon's workers—the United Food and Commercial Workers International Union AFL–CIO, CLC Local 514T ("the Union") and its predecessor.

14. During the 1993–94 collective bargaining negotiations, Ethicon bargained for the right to require workers to wear smocks, and the Union agreed to that proposal without demanding that the employees be compensated for the time.

15. In May 1996, the Union's president at the time, Tony Garcia ("Garcia"), told Ethicon that he believed the FLSA required Ethicon to pay for gowning and degowning time.

16. After receiving an advisory letter from its outside counsel, Ethicon's human resources professional who was responsible for most of Ethicon's day-to-day dealings with the Union wrote a letter to Garcia and stated that Ethicon considered the time spent to

---

**1.** According to Ethicon, "Dedicated shoes are kept in the employees' assigned shoe locker at the Ethicon facility and are not to be worn outside the facility." Dedicated shoes are to be worn throughout two facilities and in a part of a third facility.

be noncompensable and had no intention of changing its position on the issue.

17. In response, the Union filed a grievance alleging that Ethicon violated the collective bargaining agreement by not compensating employees for time changing clothes. Specifically, the grievance stated:

[T]he Union and its Executive Board do protest the company's practice of forcing wage employees to gown up to clock in. We ask that clocks be made available to employees in the gowning area for those wage employees required to gown up.

18. In mid-November 1996, a "third-step grievance meeting" was held on the Union's issue with Ethicon not paying its employees to gown up, during which the Union presented its complaint.

19. Ethicon then answered the grievance on December 20, 1996, refusing to move the time clocks as the Union requested and, as Garcia admits, "effectively denying that grievance."

20. Rather than pursuing the grievance in arbitration, the Union then withdrew the grievance because, according to Garcia:

the Union's intent was not to force an arbitration case on this but rather to see if we could prevail with our initial request and that was to put clocks in the gowning area. So we withdrew the grievance fully intending to address and resolve the matter in the negotiations.

21. Before the 1997 collective bargaining negotiations commenced, Ethicon had already begun requiring its employees to wear dedicated shoes in one of its facilities; it had informed the Union of its intention to extend that requirement to the other two facilities.

22. The Union, in response, submitted a proposal that Ethicon should pay for the gowning and degowning time by requesting that Ethicon "[p]rovide a clock in all gowning areas" in order to enable employees to be paid for gowning and degowning.

23. Ethicon insisted it would not pay for the time, and the Union withdrew its proposal.

24. The collective bargaining agreement covering the time period of March 19, 1997 to March 28, 2000 has no provision for compensation for time spent for gowning and degowning, securing and stowing tool boxes, or walk time from the employees' lockers to Ethicon's controlled manufacturing environment.

25. On January 22, 1999, the Union filed another grievance, complaining that Ethicon should pay for the gowning time in the future and for the past three years. The grievance stated:

We, the Union charge the company with non-payment for work on duties which are an integral part of their job and required of all employees in controlled environment areas. We ask that all affected employees be paid for a period going back 3 years for all unpaid time donning and doffing of the company required garments and related procedures.

26. When the parties convened to discuss this grievance, Garcia began the meeting by reading the grievance and acknowledging that the subject of the grievance "was not a new issue. It had been on the table in the past."

27. Garcia stated that the first grievance on the issue was the earlier 1996 grievance. He also acknowledged that the parties discussed the issue during the 1997 collective bargaining negotiations.

28. Around mid-March 1999, Ethicon denied the Union's grievance and insisted it would not pay for the time.

29. On March 22, 1999, the Union placed the grievance "in abeyance" and stated it would be "pursuing other

means in order to address the issue of back pay."

30. On April 5, 1999, the five *Bejil* Plaintiffs, consisting of present or former Union stewards or officers, filed the first action in this Court against Ethicon.[2]

31. After a failure of those Plaintiffs to obtain class-action certification, the Union decided to file a second lawsuit, *Aguirre, et al. v. Ethicon*, on September 21, 1999; this case included as a named plaintiff every Union member who had previously attempted to option to *Bejil*.

32. Plaintiffs' Third Amended Complaint claims in relevant part:

The failure to pay Plaintiff and other non-exempt hourly employees similarly situated their lawful wages under the Fair Labor Standards Act included, but was not limited to, failing to pay them for time spent donning and doffing sanitary and special garments

. . . .

## III.

## CONCLUSIONS OF LAW

The Court adopts by reference the legal authority cited by Ethicon in Ethicon's Brief in its Support of Motion for Summary Judgment and its Brief in Support of its Response to Plaintiff's Motion for Summary Judgment, and makes the following conclusions of law:

1. Plaintiffs' claims are subject to the provisions of 29 U.S.C. § 203(*o*), which states in its entirety:

Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by the custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

■ 2. The outergarments which are gowned and degowned by the Plaintiffs at Ethicon's facilities fall within the meaning of the terms "clothes" or "clothing" as anticipated by the provisions of 29 U.S.C. § 203(*o*).[3]

■ 3. The amount of time involved in the Plaintiffs' gowning and degowning their outergarments before and after work is noncompensable, as the years of established policies of Ethicon, collective bargaining negotiations between the parties, and unsuccessful grievances of the Union established a *custom* under a bona fide collective bargaining agreement.[4]

4. The amount of time involved in the Plaintiffs gowning and degowning their outergarments before and after work is noncompensable, as the years of established policies of Ethicon, collective bargaining negotiations between the parties,

2. According to Garcia's deposition, the lawsuit was filed because the Union saw it as an alternative to taking the second grievance to arbitration.

3. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY [unabridged] (Merriam–Webster 1986), which defines "clothing" as: "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." The Court finds it curious that Plaintiffs cite to the case of *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir.1994), for the proposition that the articles worn by Ethicon's employees are not clothing. In *IBP*, the time spent putting on and removing the relevant articles (safety glasses, earplugs, and a hard hat) was not compensable because the process "takes all of a few seconds and requires little or no concentration." *Id.*, at 1126. As such, "any time spent on [donning or doffing] these items *is not work.*" *Id.* (emphasis added). Extending this reasoning and assuming, *arguendo*, that the articles required to be worn by Ethicon's employees are not "clothing," Plaintiffs' claims for overtime compensation would nevertheless fail under *IBP* because such time for putting on and removing the articles would not be "work."

4. *See Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir.1994).

and unsuccessful grievances of the Union established a *practice* under a bona fide collective bargaining agreement.[5]

■ 5. The parties are not required to have raised the issue of not compensating employees for clothes-changing time in formal collective bargaining negotiations for the provisions of 29 U.S.C. § 203(*o*) to apply.

6. The parties are not required to have addressed not compensating employees for clothes-changing time in the express language of the collective bargaining agreement for the provisions of 29 U.S.C. § 203(*o*) to apply.

7. Plaintiffs' use of the phrase "including but not limited to" in its Third Amended Complaint failed to give Ethicon any reasonable notice that the Plaintiffs would seek recovery for anything other than compensation for clothes-changing time. As such, the Court denies Plaintiffs' Motion for Summary Judgment on the new grounds included in their Motion.[6]

## IV.

## CONCLUSION

For the reasons stated above, Ethicon's Motion for Summary Judgment is **GRANTED,** and Plaintiffs' Motion for Partial Summary Judgment on the Basis of Liability is **DENIED.** Costs are taxed to Plaintiffs.

SO ORDERED.

---

5. *See id.*

6. This includes Plaintiffs' claims for "walk time from security to the gown room, obtain [sic] their tools and carrying them to their

work station and waiting time due to congestion," and for Ethicon's alleged act of unlawfully deleting time from the Plaintiffs' time records.