USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

Nos. 02-1679

 02-1739

ABDELA TUM, ET AL.,

Plaintiffs, Appellants,

v.

BARBER FOODS, INC., d/b/a BARBER FOODS,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lynch, Circuit Judges.

 Lori B. Kisch, with whom Timothy B. Fleming, Charles R. Dixon,
Gordon, Silberman, Wiggins & Childs, P.C., and William C. Nugent
were on brief, for appellants.

 Graydon G. Stevens, with whom Kelly, Remmel & Zimmerman, were
on brief, for appellee.

March 10, 2004

 TORRUELLA, Circuit Judge. Plaintiffs-appellants are a
group of hourly wage employees ("Employees") who brought suit
against their employer, Barber Foods, for alleged violations of the
Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b). 
Employees sought compensation for alleged unrecorded and
uncompensated work performed by them for Barber Foods.

 The district court granted partial summary judgment for
the defendant. A trial was held on the issue of whether the time
spent donning and doffing required clothing constituted "work" and
whether such time was de minimis. The jury found for the
defendant. Employees appeal from the grant of summary judgment,
and from the district court's decision and they challenge two of
the district court's jury instructions. Barber Foods cross-appeals, arguing that the district court erred in ruling that the
donning and doffing of required clothing and equipment is an
integral part of the Employees' work for Barber Foods and is not
excluded from compensation under the Portal-to-Portal Act as
preliminary or postliminary activity.

 After initial review by the panel, we affirmed. Tum v.
Barber Foods, Inc., 331 F.3d 1 (1st Cir. 2003). Plaintiffs filed
a petition for rehearing, after which we received an amicus brief
from the Secretary of Labor ("the Secretary"). (1) Having considered
the arguments, we now grant rehearing but affirm.

I. Background

 Located in Portland, Maine, Barber Foods is a secondary
processor of poultry-based products. It purchases boneless chicken
breast in bulk and processes that raw material into finished
products such as stuffed entrees, chicken fingers, and nuggets. 
Barber Foods has two shifts, each with six production lines,
consisting of three "specialty" lines and three "pack-out" lines. 
The product is assembled on the specialty lines, and then, after
passing through large spiral freezers, the product is pouched,
packed, and palletized on the pack-out lines.

 The production lines are staffed primarily by rotating
associates, employees who generally rotate to different positions
on the lines every two hours. In addition to rotating associates,
Barber Foods employs set-up operators whose primary duty is to
ensure that various machines on the lines are operating properly,
meatroom associates who work where the raw product is blended with
ingredients, shipping and receiving associates, maintenance
employees, and sanitation employees.

 All associates are expected to be on the production floor
ready to work when their shift begins. They are paid from the time
they actually punch in to a computerized time-keeping system from 
time clocks located at the entrances to the production floor.

 A. Equipment

 Rotating associates are required to wear lab coats,
hairnets, earplugs, and safety glasses. The lab coats, hairnets,
and earplugs must be on before they can punch in and until they
punch out. Safety glasses and any items that they choose but are
not required to wear, such as gloves, aprons, and sleeve covers,
can be donned after punching in and doffed before punching out.

 Before they punch in, set-up operators are required to
wear lab coats, hairnets, earplugs, safety glasses, steel-toed
boots, bump hats and back belts and are required to carry lock-out/tag-out equipment, which they put in their lab coat pocket. 
Any other items they choose to wear may be donned after punching
in.

 Meatroom associates are required to wear lab coats,
hairnets, earplugs, safety glasses, steel-toed boots, back belts,
aprons, and vinyl gloves. Many also choose to wear sleeve covers. 
All items must be on before punch in, except the apron, gloves, and
sleeve covers, which can be donned after punching in and doffed
before punching out.

 Shipping and receiving associates are required to wear
steel-toed boots, hard hats, and back belts. They generally don
these items before punching in and doff them after punching out. 
Their time clock is located on the production floor, so they must
also don and doff lab coats, hairnets, and earplugs in order to
enter the production floor to punch in and out.

 Employees obtain lab coats and cotton glove liners from
the hallway between the entranceway and the equipment cage. The
lab coats are on hanger racks, and the glove liners are in tubs. 
Hairnets, earplugs, vinyl gloves, sleeve covers, and aprons are
dispensed from the window of the equipment cage. Vinyl gloves,
sleeve covers, and aprons are also available from tubs on the
production floor.

 Bump hats, back belts, safety glasses, steel-toed boots,
and reusable earplugs are dispensed once and then replaced as
needed. Items retained by associates may be stored in their locker
or taken home. Lab coats and gloves are laundered and reused; on
their way out of the plant, associates drop these items in laundry
bins located at several points along the hallway from the
production floor exits to the plant exits. Vinyl gloves, sleeve
covers, and aprons are disposed of in trash bins located on the
production floor and along the hallways from the production floor
exits to the plant exits.

 Employees may have to wait to obtain and dispense with
clothing and equipment. At busier times, there may be lines at the
coat racks, glove liner bins, and cage window. There may also be 
lines at the time clocks.

 B. Time Keeping

 Barber Foods uses a computerized time-keeping system. 
The system downloads clock punches into the payroll software. Time
clocks are located at the entrances and exits to the production
floor and at various other locations in the facility. Each
employee has a swipe card with a bar code, which she swipes through
the time clock. Rotating associates, set-up operators, and
meatroom employees generally punch in at a clock in the area where
they will be working and punch out on the clocks located next to
the two primary exits. Maintenance employees punch in on a time
clock in the maintenance room. Shipping-and-receiving employees
punch in and out on the plant office clock located by the shipping-and-receiving office. Sanitation associates punch in on the
cafeteria clock and punch out at the plant office clock.

 Employees get paid from the moment they punch in. In an
attempt to stagger check-in times, Barber Foods allows Employees
twelve minutes of "swing time," meaning that Employees can punch in
up to six minutes early and get paid for that additional time or
punch in up to six minutes late and not be charged with an
attendance violation.

 C. History of Dispute

 Seven current employees and thirty-seven former employees
brought suit in district court claiming that Barber Foods violated
the FLSA by forcing its hourly employees to work "off the clock" by
not paying Employees for the time it takes to obtain, don, and doff
their gear. Although the district court granted summary judgment
for the defendants as to most counts, the court denied summary
judgment as to the claim involving the donning and doffing of
required clothing and equipment. The court found that the donning
and doffing of clothing and equipment required by Barber Foods or
by government regulation is an integral part of Plaintiffs'
employment. This finding removed the donning and doffing of
required gear from the Portal-to-Portal Act and its exclusion of
compensability for preliminary or postliminary activity. 29 C.F.R.
§ 790.8. A trial was held on the issue of whether the time spent
donning and doffing required clothing was de minimis and thus did
not constitute work under the FLSA.

 The jury found that the combined donning and doffing
times are 1 minute for rotating associates, 2 minutes 16 seconds
for set-up operators, 1 minute 53 seconds for meatroom associates,
2 minutes 8 seconds for shipping and receiving associates, and no
time for maintenance and sanitation workers because they are not
required to don clothing before punching in or to doff clothing
after punching out. The jury found that each of these donning and
doffing times is de minimis, making the donning and doffing time
non-compensable. Employees do not challenge the jury's findings.

 Employees appeal the following findings in the partial
summary judgment decision: (1) that the time employees must
necessarily spend walking and waiting in connection with obtaining,
donning, doffing, and disposing of the sanitary and protective gear
required by Barber Foods and/or federal regulation is not
compensable; (2) that the time spent donning and doffing clothing,
equipment, and gear which is not expressly required by Barber Foods
is non-compensable. (2) In addition, Employees challenge two district
court jury instructions. (3)

II. Standard of Review

 We review summary judgment decisions de novo. Kauch v. 
Dep't for Children, Youth and Their Families, 321 F.3d 1, 3-4 (1st
Cir. 2003). Construing the facts in the light most favorable to
the nonmoving party, our role is to "determine whether there is a
genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249 (1986).

III. Discussion

 The FLSA requires an employer to record, credit, and
compensate employees for all of the time which the employer
requires or permits employees to work, 29 U.S.C. § 201, et seq.,
commonly defined as "physical or mental exertion (whether
burdensome or not) controlled or required by the employer and
pursued necessarily and primarily for the benefit of the employer
and his business." Tenn. Coal, Iron & R.R. Co. v. Muscoda Local
No. 123, 321 U.S. 590, 598 (1944); see also Reich v. New York City
Transit Auth., 45 F.3d 646, 649 (2d Cir. 1995).

 However, even when an activity is properly classified as
"work," the Portal-to-Portal Act, 29 U.S.C. § 254, exempts from
compensation activities which are preliminary or postliminary to an
employee's principal activity or activities unless they are an
"integral and indispensable part of the principal activities for
which covered work[ers] are employed and not specifically excluded
by section 4(a)(1) [of the Portal-to-Portal Act]." Lindow v.
United States, 738 F.2d 1057, 1060 (9th Cir. 1984) (citation and
quotations marks omitted); Reich, 45 F.3d at 649. In addition,
some activities that may qualify as "work" and fall outside of the
Portal-to-Portal Act nevertheless do not require compensation
because the activities require such little time that they are
adjudged de minimis. Dunlop v. City Elec., Inc., 527 F.2d 394, 401
(5th Cir. 1976).

 A. Donning and Doffing of Gear

 The district court found that the donning and doffing of
required gear is an integral and indispensable part of Employees'
principal activities. See generally Steiner v. Mitchell, 350 U.S.
247 (1956) (holding that activities should be considered integral
and indispensable when they are part of the principal activities
for the particular job tasks); Mitchell v. King Packing Co., 350
U.S. 260 (1956). We agree with the district court's conclusion as
to the required gear. In the context of this case, Employees are
required by Barber Foods and or government regulation to wear the
gear. Therefore, these tasks are integral to the principal
activity and therefore compensable. See Alvarez v. IBP, Inc., 339
F.3d 894, 903 (9th Cir. 2003) (holding that donning and doffing
which is both required by law and done for the benefit of employer
is integral and indispensable part of the workday); cf. 29 C.F.R.
§ 1910.132(a).

 As relates to the non-required gear, Employees contend
that any activity which promotes safety and sanitary conditions
necessarily benefits the employer. We think this takes the
argument too far. The donning and doffing of non-required gear is
not compensable under these facts. Not everything an employee does
in her workplace is compensable under the FLSA. These optional
items required are neither by the employer nor by the regulations
and are worn by Employees at their own discretion.

 B. Walking Time

 Employees argue that the district court improperly
excluded from compensable time the periods Employees walk from one
area where they obtain an initial piece of clothing or equipment
(required by Barber Foods and/or USDA regulations) to another area
where they obtain additional items, the period they spend walking
from getting their garb to the time clocks, and the period they
spend walking to the area where they dispose of clothing and
equipment after they punch out.

 The Portal-to-Portal Act specifically addresses walking
time, generally exempting from compensation "walking, riding, or
traveling to and from the actual place of performance of the
principal activity or activities which such employee is employed to
perform." 29 U.S.C. § 254(a)(1). The Act also generally exempts
from compensation activities which are preliminary or postliminary
to an employee's principal activity or activities. See U.S.C.
§ 254(a)(2). On their face, these provisions would appear to
exempt from compensation the walking at issue here.

 Employees argue that the Portal-to-Portal Act excludes
only that walking time which occurs before an employee commences
her principal activity or activities. See 29 U.S.C. § 254(a)(1)-(2). The Code of Federal Regulations ("Code") states that Congress
intended the term "principal activities" to be broad. 29 C.F.R.
§ 790.8(a) (2002). However, the Code regulations state that just
because the changing of clothes may in "certain situations be so
directly related to the specific work the employee is employed to
perform that it would be regarded as an integral part of the
employee's 'principal activity[,]' [t]his does not necessarily
mean, however, that travel between the washroom or clothes-changing
place and the actual place of performance of the specific work the
employee is employed to perform, would be excluded from the type of
travel to which section 4(a) [Portal-to-Portal Act] refers." 29
C.F.R. § 790.7(g) n.49 (citing colloquy between Senators Cooper and
McGrath, 93 Cong. Rec. 2297-2298) (internal citation omitted).

 Compensability issues are determined under the FLSA and
its accompanying regulations. Both parties agree that the Portal-to-Portal Act does not apply to questions of compensability during
the "workday." (4) The Secretary urges an expansion of the ordinary
"workday" rule in favor of a broader, automatic rule that any
activity that satisfies the "integral and indispensable" test
itself starts the workday, regardless of context. This extension
overreaches and would lead to the absurd result that an employee
who dons required equipment supplied by the company at 5:00 a.m.,
at his own home, starts his workday for FLSA purposes at 5:00 a.m.
-- even though he is not required to punch in to work and does not
punch in until 8:00 a.m. This plainly cannot be what Congress
intended. The Secretary offers a fallback position that the
workday starts with any donning or doffing of required gear so long
as it is done on company property. But the logic of the
Secretary's position does not permit such a narrowing, nor does the
Secretary's fallback argument make sense in a world, for example,
in which not all employees who perform work that is compensable
under the FLSA do so at a facility owned and run by their employer.

 Further, nothing in Steiner requires the result that the
Secretary urges, (5) and the Secretary's rule threatens to undermine
Congress's purpose in the Portal-to-Portal Act, which (with rare
exceptions) sought to exclude preliminary and postliminary waiting
and walking time from compensability. Not surprisingly, the
Secretary's broad position has implicitly been rejected by two
circuits. See Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d
556, 563 n.12 (E.D. Tex. 2001), aff'd, 2002 WL 1396949 (5th Cir.
2002); Reich v. IBP, Inc., 38 F.3d 1123, 1127 (10th Cir. 1994). 
But see Alvarez, 339 F.3d at 906-07.

 The Secretary's position is one taken in litigation, in
response to an invitation from this court. The Secretary has no
authority to promulgate legislative rules in this area. The
Secretary has promulgated interpretive regulations, which are
entitled to some weight, see Skidmore v. Swift & Co., 323 U.S. 134,
140 (1944), but those regulations appear to cut both ways on the
facts of this case. In any event, the Secretary's present
litigation position, in our view, pushes so far that it threatens
to undermine the Portal-to-Portal Act. We affirm the determination
that the employees' walking time is not compensable.

 C. Waiting Time

 Employees claim that Barber Foods must compensate them
for all the time they spend waiting in line to receive the required
clothing or equipment and to punch in at the time clocks.

 Whether waiting time is compensable under the FLSA
depends on whether an employee is "waiting to be engaged" or
"engaged to wait." See generally Skidmore, 323 U.S. at 136-37. 
Idle time may be considered work under the FLSA where it is
controlled by the employer and the time spent is dominated by the
need to serve the employer's needs. See Armour & Co. v. Wantock,
323 U.S. 126, 133-34 (1944). The regulations elaborate on this
principle by stating that an employee is engaged to wait, i.e.,
working, when "the employee is unable to use the time effectively
for his own purposes. It belongs to and is controlled by the
employer." See 29 C.F.R. § 785.15 (citations omitted). The
Secretary argues that the waiting time spent by the Employees is
integral to their principal activities, and compensable under the
FLSA.

 First, Employees argue that they should be compensated
for time spent waiting to punch in at the time clocks. Waiting in
line to punch in at the time clock is explicitly excluded from
compensable activity by 29 C.F.R. § 790.8(c). (6) There is no
indication that any of the time spent waiting is controlled by the
employer. Employees have adduced no evidence to counter that
conclusion.

 Second, we turn to the waiting time associated with
donning and doffing of clothes. Even if we were to find that the
employees were engaged to wait under the FLSA and its accompanying
regulations, the waiting time would qualify as preliminary or
postliminary activity under the Portal-to-Portal Act. "Wait time
is compensable when it is part of a principal activity, but not if
it is preliminary or postliminary activity." Vega v. Gasper, 36
F.3d 417, 425 (5th Cir. 1994). When we look at 29 C.F.R. § 790.8,
we find that while the Code does not explicitly address the type of
waiting time at issue, the Code indicates that a reasonable amount
of waiting time is intended to be preliminary or postliminary. By
making compensable some activities that are not traditionally
thought of as primary activities, such as a logger carrying heavy
equipment out to the logging site and a butcher sharpening knives,
the Code was compensating workers for activities that are so
integral to a principal activity that they cannot be separated from
that activity. However, by excluding walking with ordinary
equipment and carrying light equipment, the Code indicates that a
line must be drawn, otherwise an almost endless number of
activities that precipitate the employees' essential tasks would be
compensable. We find that a short amount of time spent waiting in
line for gear is the type of activity that the Portal-to-Portal Act
excludes from compensation as preliminary.

 D. Barber Foods' Cross-Appeal

 Although Barber Foods ultimately prevailed on all counts,
it appeals the district court's finding that the donning and
doffing of Employees' required clothing and equipment is an
integral part of the Employees' work at Barber Foods. "As a
general rule, a party may not appeal from a favorable judgment
simply to obtain review of findings it deems erroneous." Mathias
v. WorldCom Techs., Inc., 535 U.S. 682, 684 (2002) (per curiam).

 If we were to do as Barber Foods asks and reverse the
challenged district court finding, our action would provide no
tangible relief to Barber Foods; the company has already received
all requested relief. See New York Tel. Co. v. Maltbie, 291 U.S.
645 (1934).

 E. Jury Instructions

 Employees challenge two jury instructions, which "[w]e
examine . . . to determine whether they adequately explained the
law or whether they tended to confuse or mislead the jury on the
controlling issues." Federico v. Order of Saint Benedict, 64 F.3d
1, 4 (1st Cir. 1995). We will reverse jury instructions only if
the error was prejudicial in light of the entire record. Id. at 3. 
"An erroneous jury instruction necessitates a new trial only if the
error could have affected the result of the jury's deliberations." 
Allen v. Chance Mfg. Co, 873 F.2d 465, 469 (1st Cir. 1989).

 The first challenged jury instruction states the
following:

 I instruct you that any time spent walking
between the time clock and a bin or locker is
not compensable. . . . It is only the time
spent actually putting on or taking off the
item and placing it in a bin or locker which
you must determine.

After the trial judge gave the instruction, Employees' counsel
objected, arguing that the jurors might believe that they are not
to compensate an employee if she is walking while donning or
doffing.

 We find no error in this instruction. When we look at
the instructions in their entirety, we find that the jurors were
clearly apprised of their duty, and that the instruction would not
have confused or misled the jury about the controlling issues. (7)

 The second challenge is also without foundation. The
challenged instruction states:

 Now, I instructed you to don an item of
clothing, for legal purposes, means to obtain
and put that item on. To doff an item of
clothing or equipment for these purposes means
to take it off and place it in a bin or
locker.

Employees contend that the judge incorrectly defined donning only
in terms of clothing and should have included equipment and that
the jury could mistakenly conclude that taking an item out of a bin
or locker is not compensable.

 The trial judge's instruction contained no error. The
instruction adequately illuminated the applicable law by stating
that donning includes obtaining the item. Consequently, we find
that the instruction did not confuse or mislead the jury.

IV. Conclusion

 For the reasons stated above, we affirm the district
court judgment.

 Affirmed.

Concurring opinion follows.

 BOUDIN, Chief Judge (concurring). The central issue in
this case is whether walking and waiting time, incident to the
donning and doffing of required clothes and equipment, are
compensable where (according to findings in the district court) the
time spent in donning and doffing is minimal but the combined
walking and waiting time may be extensive. There may be no "right"
answer short of the Supreme Court's reading of its own precedents,
but the problem can at least be understood if the history and
underlying tensions are candidly arrayed.

 The original Fair Labor Standards Act made compensable
time spent in "work," but it defined the concept only in the most
general terms without providing the Secretary of Labor with power
to make legislative-type rules defining what constituted "work." 
This left many problems to be solved piecemeal by litigation. One
had to do with traveling within the job site before the main
activity commenced; another, with the donning of special gear. A
classic example is the miner's travel and descent from the mine
portal to the working face.

 Against the background of the New Deal (and the war), it
was not hard for the Supreme Court to conclude that subterranean
travel through dark and dangerous tunnels, undertaken for the mine
owner's benefit, was work. (8) Shortly thereafter, the Supreme Court
extended the reasoning in the mine-worker cases to conclude that
time spent by employees of a medium-sized pottery factory in
walking from time clock to work bench, and in making preliminary
preparations such as donning and doffing specialized clothing, was
work just as much as the actual productive activity that followed. 
Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691-93 (1946).

 These holdings contradicted actual pay practice within
the industries and created large overhanging liabilities for
employers. To the extent that workers received more than the
minimum wage, the decisions also upset underlying bargains. A
flood of lawsuits followed. Congress responded with the Portal-to-Portal Act to cut off these claims for the past and to provide in
the future (with exceptions not here relevant) that compensation
was not required for:

 (1) walking, riding, or traveling to and from
the actual place of performance of the
principal activity or activities which such
employee is employed to perform, and

 (2) activities which are preliminary to or
postliminary to said principal activity or
activities,

 which occur either prior to the time on any
particular workday at which such employee
commences, or subsequent to the time on any
particular workday at which he ceases, such
principal activity or activities . . . .

29 U.S.C. § 254(a) (2000).

 A decade later, this new legislative balance was reset
(and perhaps upset) in a small way by a new Supreme Court decision. 
In Steiner v. Mitchell, 350 U.S. 247 (1956), the Justices held that
the Portal-to-Portal Act did not cover the time spent donning and
doffing of special clothing and time spent showering, in facilities
required by state law, to protect workers dealing with dangerously
caustic and toxic materials. And, since the Portal-to-Portal Act
did not apply, the time was to be treated as compensable work under
the Fair Labor Standards Act.

 Steiner was an understandable reaction--after all, the
dangers were extreme and unique to the job--and the decision
effectively invoked a verbal formula culled from the legislative
history of the Act, 350 U.S. at 256 (concluding that pre-shift and
post-shift activities are compensable if they are an "integral and
indispensable" part of the principal activity); but the tension
with the Portal-to-Portal Act's underlying policy has been less
easy to escape as Steiner has been extended.

 One such extension by the lower courts embraced
protective clothing necessitated by less extreme health or safety
concerns, although the precedents are not uniform. (9) However, the
more serious problem for employers arises in cases such as this one
by attempts to extend Steiner further to walking and waiting
incident to such donning and doffing. This course may greatly
extend the amount of time in question and may seem especially
incongruous where the amount of time spent in actually donning and
doffing clothes and equipment is generally pretty minimal.

 The Secretary defends such an extension by combining
Steiner's verbal formula--"integral and indispensable"--with
another settled principle: that once the workday has begun with the
first principal activity, anything else until the workday ends is
compensable unless the employee is essentially on his own (e.g.,
lunch breaks). On this theory, a worker who picks up and puts on
a required helmet at the plant entrance--an activity integral to a
principal activity under Steiner (as extended by lower courts)--then must be compensated for everything else that happens (e.g.,
walking and waiting to pick up more equipment, walking to the time
clock at the production floor entrance, waiting to punch in).

 Yet, thus extended, the tension with the Portal-to-Portal
Act becomes acute: after all, why is this complex of donning,
doffing, waiting and travel within the Barber plant very different
from the preliminary activities which were involved in the Mt.
Clemens case--one of the targets of the Portal-to-Portal Act. 
Further, the legislative history and the Secretary's own
regulations give examples of events excluded from compensable
work--such as time spent waiting to punch in and time spent walking
from plant gate to work bench--that appear at odds with her
position in this case. See S. Rep. No. 80-48, at 47 (1947); 29
C.F.R. § 790.7.

 The Secretary answers, in effect, that those examples
assumed that no required helmet was donned at the entrance--but
should this really convert everything after into compensable work
when it would not otherwise be? In any event, the Secretary can
cite a favorable result in the Ninth Circuit, see Alvarez, 339 F.3d
at 906-07; but the Fifth and Tenth Circuits, addressing variants on
this theme, have resisted the Secretary's result, although not for
the same reasons. (10)

 One further basis for resisting the Secretary derives
from yet another principle from the Supreme Court, namely, that
under certain circumstances time spent on a de minimis activity
that is not the main activity of the worker should be disregarded. 
See Mt. Clemens, 328 U.S. at 692-93. If the time spent donning and
doffing is de minimis, can it also not be disregarded as starting
the workday and allow courts to disregard the associated walking
and waiting? Such a result is not on its face at odds with Steiner
where the donning and doffing and showering were not claimed to be
de minimis.

 The Secretary replies that the de minimis concept has
nothing to do with when the workday begins or ends but the de
minimis concept is much fuzzier than the Secretary lets on: in the
Supreme Court case that spawned it, the Court stated broadly that
"compensable working time is involved" only "when an employee is
required to give up a substantial measure of his time and effort." 
Mt. Clemens, 328 U.S. at 692. So one could say that a de minimis
activity which is non-compensable time under Mt. Clemens does not
start of the workday, at least when preliminary to arrival "on the
factory floor."

 Thus, two positions are juxtaposed. One is the
Secretary's mechanical combination of Steiner with a rigid
"everything after is work" principle. The other is to treat
required donning and doffing as compensable where more than de
minimis but, where it is not, leaving both it and any associated
walking and waiting time as non-compensable. Neither outcome is
impossible analytically and neither is clearly dictated by Supreme
Court precedent or underlying policy.

 So where does the balance of advantage lie? Admittedly,
the donning, doffing, waiting and walking involved are in the
employer's service: but that was equally true in the Mt. Clemens
case and Congress made a policy decision against required
compensation. And, while the Secretary's interpretive view
(although non-binding) is entitled to some deference, United States
v. Mead Corp., 533 U.S. 218, 228 (2001), it is recent and offered
only in litigation: no explicit regulation mandates the Secretary's
outcome and the text of C.F.R. § 790.7(g) n.49 points towards
excluding the walking and waiting time.

 On Barber's side, as already noted, the history and
language of the Portal-to-Portal Act tend to favor Barber, as do
two of the three circuit decisions; the question is how far Steiner
has qualified the statute. Perhaps it is enough for a lower court
that the Secretary's position is, in practical effect, a
substantial step beyond Steiner. As Steiner itself tempers the
Portal-to-Portal Act's main thrust, probably its extension should
be left to the Supreme Court.

 Finally, it appears that wages at the Barber plant were
set against a background practice of treating as non-compensable
the donning, doffing, walking and waiting involved in this case. 
Unless those wages are the federal minimum, a decision that now
such time is compensable will likely be offset by wage adjustments
in the future, leaving only a one- time windfall for employees. It
is hard to begrudge this to workers doing difficult and
disagreeable work, but the situation does bear an uncanny
resemblance to that which prompted the Portal-to-Portal Act. It
may be time for the Supreme Court to have another look at the
problem.
1. In addition, the Secretary has filed two letters pursuant to
Fed. R. App. P. 28(j).
2. In their brief, Employees argue that the district court erred in
finding that Employees failed to raise in their Complaint or in
their Opposition to Summary Judgment a claim that they are entitled
to compensation for Employees' activities after punching out on the
time clocks. Because we find that it is at least arguable that the
issue was raised below, we address it on the merits.
3. In their Statement of Issues, Employees contend that they appeal
from the district court's finding that Barber Foods is entitled to
summary judgment on the issue of whether time spent by maintenance
and shipping and receiving employees is de minimis. However, they
have waived their right to appeal by failing to make an attempt at
developed argumentation. Twomey v. Delta Airlines Pilots Pension
Plan, 328 F.3d 27, 33 n.4 (1st Cir. 2003).
4. The regulations state that "[p]eriods of time between the
commencement of the employee's first principal activity and the
completion of his last principal activity on any workday must be
included in the computation of hours worked to the same extent as
would be required if the Portal[-to-Portal] Act had not been
enacted. The principles for determining hours worked within the
'workday' proper will continue to be those established under the
Fair Labor Standards Act without reference to the Portal
Act. . . ." 29 C.F.R. § 790.6.
5. Steiner concerned only time spent in the donning and doffing of
special protective equipment and in required protective showers. 
Steiner did not purport to say that all time walking to where that
equipment is stored, waiting to retrieve and return it, and then
walking to the time clock is compensable.
6. "[A]ctivities such as checking in and out and waiting in line to
do so would not ordinarily be regarded as integral parts of the
principal activity or activities." 29 C.F.R. § 790.8.
7. The instruction went on to clarify the jury's duty:

 In deciding how much time it takes an
associate to don and doff required clothing
and equipment, you are not to decide the
actual time it may take any individual
employee or associate to perform those
activities, rather you must decide the amount
of time that you think is reasonably required
by a reasonably diligent associate or employee
to don and doff the required clothing and
equipment.
8. See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine
Workers, 325 U.S. 161, 163-66 (1945); Tennessee Coal, Iron. & R.R.
Co. v. Muscoda Local No. 123, 321 U.S. 590, 598-99 (1944).
9. Compare, e.g., Alvarez v. IBP, Inc., 339 F.3d 894, 903 (9th Cir.
2003) (extending Steiner to such items as sanitary aprons) with
e.g., Reich v. IBP, Inc., 38 F.3d 1123, 1126 (10th Cir. 1994)
(holding that the donning and doffing of sanitary outergarments,
although required, was not integral and indispensable); Anderson v.
Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 563 (E.D. Tex.
2001)(same), aff'd, WL 1396949 (5th Cir. 2002).
10. Andersen, 147 F. Supp. 2d at 563 n.12 (holding that "walk time"
to employee's work station was not compensable), aff'd, 2002 WL
1396949 (5th Cir.); Reich, 38 F.3d at 1127 (upholding the denial of
"walk and wait" time related to donning and doffing).