Jacqueline DAVIS and Barbara Green, Plaintiffs,

v.

CHAROEN POKPHAND (USA), INC., Defendant.

Civil Action No. 02–T–1029–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 11, 2004.

Jere L. Beasley, Wilson Daniel Miles, III, Roman Ashley Shaul, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for Plaintiffs.

J. Frederic Ingram, Marcel L. Debruge, Ashley H. Hattaway, Ronald Wayne Flowers, Jr., Burr & Forman LLP, J. Patrick Logan, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, Joel P. Smith, Jr., Williams, Potthoff, Williams & Smith, LLC, Eufaula, AL, for Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Jacqueline Davis and Barbara Green bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–219, on behalf of themselves and others similarly situated, alleging that their employer, defendant Charoen Pokphand (USA), Inc., violated the FLSA by failing to pay them overtime wages for work over 40 hours per week. The jurisdiction of the court is properly invoked pursuant to 29 U.S.C.A. §§ 216(b) and 28 U.S.C.A. § 1331. This case is now before the court on Pokphand's motions for summary judgment. For the reasons that follow, the court will grant in part and deny in part Pokphand's motions.

## I. BACKGROUND

Plaintiffs are employed at Pokphand's chicken-processing plant located in Baker Hill, Alabama. Even though Pokphand's employees are required to use a time card to "clock in," employees are not paid for their time until their shift begins. Plaintiffs allege that Pokphand failed to compensate them for time spent donning and doffing clothing and protective gear prior to the beginning of their shifts, for time spent completing work tasks prior to their shifts, and for time spent washing up and donning and doffing clothing and protective gear during their breaks. It will be helpful to summarize the jobs held by plaintiffs and the allegations with respect to each job.

### A. Plaintiff Davis

Davis has held three positions at Pokphand since 1998: USDA inspector-helper, quality-assurance technician, and chiller operator.

#### 1. USDA Inspector–Helper

Davis worked as a USDA inspector-helper at Pokphand during three periods of time: August 6, 1998, through May 11, 1999; June 22, 1999, through July 19, 1999; and March 27, 2001, through January 25, 2002. She worked next to a USDA inspector and marked each chicken the inspector examined as acceptable or unacceptable. The USDA inspector-helper position is covered by the collective bargaining agreement (CBA), entered into by Pokphand and a union, the Retail, Wholesale and Department Store Union, AFL–CIO, effective March 1, 2000.

Davis spent time at the plant before her shift donning and doffing clothing and protective gear. Before beginning her 6:00 a.m. shift, she donned a hat or hairnet, a smock, an apron, rubber gloves, protective gloves, and arm guards. She was required by Pokphand to wear all of these items except the apron, and she was required to don these items inside the plant. It took her two to three minutes to don these items. Davis also donned safety boots prior to her shift. She wore the boots because she understood that she would not be compensated in the event of an accident unless she was wearing the boots; prior to

March 2001, she was required to don the boots at the plant. She testified that it took her 12 minutes to put on her boots before beginning her shift.

Davis also spent time during her two unpaid 30–minute breaks donning and doffing her clothing and protective gear. She testified that she spent between ten and 15 minutes of each of her breaks putting on, and taking off, clothing and protective gear. Before going on break, she took off her hairnet, smock, apron, gloves, and arm guards; she testified that this took a matter of seconds. Davis also spent three to four minutes using the washing station before leaving the processing area for her break; she was not required to use the washing station, but Pokphand emphasized cleanliness to its employees. After her break, she spent an additional two to three minutes putting her clothing and protective gear back on. Davis spent an additional 30 seconds washing off before returning to her work station.

### 2. Quality–Assurance Technician

Davis worked as a quality-assurance technician from September 13, 1999, until March 27, 2001. She checked the temperature and weight of chickens before they were shipped. The quality-assurance-technician position is not covered by the CBA between Pokphand and the union.

As a quality-assurance technician, Davis wore a hairnet, a smock, and rubber gloves; it took her a few seconds to put those on before beginning her shift. She also wore a warm jumpsuit given to her by Pokphand because it was cold in the area where she worked; it took her three to four minutes to put the jumpsuit on. She also wore boots, and it took her 12 to 13 minutes to put her boots on. Pokphand required that Davis wear the hairnet, smock, and rubber gloves; Pokphand did not require that Davis wear the jumpsuit, but it provided the jumpsuit. Pokphand did not require the boots, but Davis wore them because of her understanding regarding compensation in the event of an accident.

Before starting her shift, Davis also had to calibrate a scale, a task that took seconds, and calibrate thermometers, a task that took between one and five minutes. At some point, Pokphand began scheduling employees to come in early to do the calibrating; employees scheduled to come in early are compensated. Davis also spent five minutes inspecting the shipping area prior to her shift.

Davis also testified that she spent between three and four minutes taking her clothing and protective gear off during her breaks and between three and four minutes putting it back on after her breaks.

### 3. Chiller Operator

Davis has been employed by Pokphand as a chiller operator since January 25, 2002. She monitors a tank of chemical water in which chickens are washed to kill any diseases. The chiller-operator position is covered by the CBA.

As a chiller operator, Davis dons a smock, a hard hat, a hairnet, gloves, and boots prior to her shift. Pokphand requires her to wear the hairnet and smock. She wears the boots because of her understanding of Pokphand's injury policy. Davis also takes up to ten minutes everyday to gather charts and to get a new pair of gloves before her shift; she also calibrates thermometers prior to her shift.

### B. Plaintiff Green

Since starting at Pokphand in 1998, Green has held a number of positions in the debone area, including "pull breasts," "leg quarter pack out," yield technician, and supervisor-in-training. Green has worn the same clothing and protective gear in all of her jobs. All of Green's jobs have been covered by the CBA.

Green dons various articles of clothing and protective gear prior to the start of her shift. She puts on a hairnet, earplugs, boots, a smock, an apron, cotton gloves, rubber gloves, cutting gloves, arm guards, and plastic sleeves. Generally, she is required by Pokphand to wear only the hairnet, earplugs, smock, rubber gloves, and cutting gloves, but she is required to wear the plastic sleeves when she is "on the line." Green wears the boots for the same reason that Davis does; she understands she will not be compensated in the event of an injury if she is not wearing them. She is allowed to put on her boots and hairnet outside the plant, but she is required to put on all her other clothing and protective gear in the production area. All told, it takes her between nine and ten minutes to don this clothing and protective gear.

Green testified that she is required to wash her hands and equipment before beginning her shift, a task that takes her two minutes to complete. She also testified that in her current job as a yield technician, she is required to do three to four minutes of paper work before beginning her shift.

Green also takes time during her breaks to don and doff her clothing and protective gear. She is required to take off her smock and gloves before going on break; it takes her four to five minutes to take off her smock and gloves.

## II. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Plaintiffs claim that Pokphand violated the FLSA, as codified at 29 U.S.C.A. §§ 207(a)(1) and 215(a)(2). Section 207(a)(1) provides in relevant part that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Section 215(a)(2) provides that it shall be unlawful to violate § 207. Plaintiffs claim that Pokphand violated §§ 207 and 215(a)(2) by failing to pay them for certain work done before and after their shifts and during their breaks.

Plaintiffs' claims can be organized into three categories: (A) pre- and post-shift donning and doffing of clothing and protective gear; (B) pre-shift tasks, including filling out paperwork, washing, gathering supplies, calibrating equipment, and inspecting work areas; and (C) break-period washing up and donning and doffing of clothing and protective gear. Pokphand moves for summary judgment on all three categories of claims. Pokphand also moves for summary judgment on any claims arising before September 4, 2000, on the ground that they are barred by the applicable statute of limitations.

### A. Pre- and Post–Shift Donning and Doffing of Clothing and Protective Gear

Pokphand makes three arguments for why summary judgment is appropriate on plaintiffs' pre- and post-shift donning-and-doffing claims. Pokphand argues that these activities are not compensable under the FLSA because (1) they are excluded based on a custom or practice under the CBA, 29 U.S.C.A. § 203(o), (2) they are excluded preliminary activities, § 254, and (3) they are *de minimis*. For the reasons that follow, the court will grant in part and deny in part Pokphand's motions for summary judgment with respect to plaintiffs' pre- and post-shift donning-and-doffing claims.

### 1. Collective–Bargaining Agreement

Pokphand argues that summary judgment is appropriate because the pre- and post-shift donning and doffing of clothing and protective gear is not compensable under the FLSA, which provides that "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom under a bona fide collective-bargaining agreement" shall be excluded from "hours worked." 29 U.S.C.A. § 203(*o*). Davis's jobs as a USDA inspector-helper and chiller operator and all of Green's jobs are covered by Pokphand's CBA. The burden of proof is ultimately on Pokphand to prove that the FLSA's § 203(*o*) exception applies. *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir.2001).

■ The CBA does not expressly exclude donning-and-doffing time, so the determinative issue is whether that time is excluded from compensation by practice or custom. The non-compensation of time spent donning and doffing clothing prior to a shift becomes a "practice" under § 203(*o*) when the union raises the issue of compensation prior to collective bargaining and the CBA is silent on the issue. *Hoover v. Wyandotte Chem. Corp.*, 455 F.2d 387, 389 (5th Cir.1972) [1]; *see also Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 (5th Cir. 2001); *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 675 (2d Cir.1994). In *Bejil*, plaintiffs sought compensation under the FLSA for their time spent donning and doffing lab coats, hair covers, and shoe covers prior to beginning their shifts at a medical supplies factory. 269 F.3d at 478–79. The union representing plaintiffs had raised the issue of compensation prior to negotiating the CBA in effect at the factory, but the agreement did not provide compensation. *Id.* at 479. The court held that "[b]y not incorporating compensation for clothes changing ... into the collective-bargaining agreement ..., nonpayment became the 'custom and practice.'" *Id.* at 480.

■ The facts in the case are analogous. Davis was on the union's bargaining com-

---

**1.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

mittee, and she testified that she talked about the issue of compensation for donning and doffing with the union's negotiator prior to negotiation on the CBA.[2] It is not disputed that the bargaining agreement contains no provision for compensation for pre-shift donning-and-doffing time, and Davis testified that she knew that under the CBA, she was not to be compensated for such time.[3] Green also testified that it was Pokphand's practice not to compensate for pre-shift donning-and-doffing time both before and after Pokphand and the union entered into the CBA.[4]

Plaintiffs, on the other hand, offer no evidence establishing a genuine issue of material fact whether a practice or custom was established. Rather, plaintiffs argue that the clothing and protective gear at issue in this claim is outside the meaning of the term "clothing" in the statute. The Fifth Circuit Court of Appeals succinctly addressed this argument:

> "The plaintiffs attempt to distinguish their case by claiming that the sanitary garments used in the present case are not 'clothes' under § 203(o) and therefore, that section should not be applicable. The distinction plaintiffs make, however, is nonsensical.... Webster's defines 'clothing' as 'covering for the human body or garments in general.' The plaintiffs here put on, among other things, (1) a lab coat; (2) dedicated shoes or shoe coverings; and (3) hair or beard coverings. These items all appear to fall under the definition of 'clothes.'"

*Bejil,* 269 F.3d at 480 n. 3.

This court thus has no trouble finding that the FLSA's § 203(o) exception applies. Because plaintiffs have offered no evidence, summary judgment is appropriate on their claims for pre- and post-shift donning and doffing of clothing and protective gear related to jobs covered by the CBA.

### 2. Preliminary Activities

Because summary judgment is appropriate on the pre- and post-shift donning-and-doffing claims related to jobs covered by the CBA on the basis of § 203(o), the court need consider Pokphand's alternative grounds for summary judgment only as they apply to the one job category not covered by the CBA, Davis's quality-assurance-technician position. Pokphand argues that summary judgment is appropriate because pre- and post-shift donning and doffing of clothing and protective gear is excepted from coverage under the FLSA by the Portal–to–Portal Act, 29 U.S.C.A. §§ 251–262, which amended the FLSA.

 Under the Portal–to–Portal Act, "no employer shall be subject to any liability or punishment under the [FLSA] ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for ... activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C.A. § 254(a)(2). Activities are within the coverage of the FLSA—and outside of the exception in the Portal–to–Portal Act—if "those activities are an integral and indispensable part of the principal activities for which covered

---

**2.** Defendant's evidentiary submissions, filed July 18, 2003, exh. 2, deposition of Jacqueline Davis, January 31, 2003, (Davis depo.), pp. 78–80, 110–111, 125–126.

**3.** *Id.* at 166–167.

**4.** Defendant's evidentiary submissions, filed October 15, 2003, exh. 1, deposition of Barbara Green, February 6, 2003, (Green depo.), pp. 34–35.

workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). To be "integral and indispensable," an activity must be necessary to the business and performed primarily for the benefit of the employer. *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976); *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 902–03 (9th Cir. 2003). The Portal–to–Portal Act exception is to be construed narrowly. *Dunlop*, 527 F.2d at 398–99.

■ The court finds that a genuine issue of material fact exists as to whether Davis's pre- and post-shift donning-and-doffing activity related to her position as a quality-assurance technician is compensable under the FLSA and the Portal–to–Portal Act. Therefore, summary judgment on this claim is not appropriate on the basis of the Portal–to–Portal Act's § 254 exception. First, a genuine issue of material fact exists as to whether the donning-and-doffing activity is necessary to Pokphand's business. *Dunlop*, 527 F.2d at 401. That an activity is required by an employer is evidence of its necessity. *Steiner*, 350 U.S. at 251–252, 76 S.Ct. at 333; *Alvarez*, 339 F.3d at 903. Davis testified that, in her job as a quality-assurance technician, she was required to don a hairnet, rubber gloves, and a smock.[5] In her capacity as a quality-assurance technician, she also had to don a jumpsuit—provided by Pokphand—because of the cold.[6] She

also testified that she has been told by Pokphand that she must don a pair of safety boots or else she will be responsible for any injury she receives.[7] Additionally, an activity is necessary for an employer's business if it is required by statute or regulation. *Alvarez*, 339 F.3d at 903. Davis has offered 21 C.F.R. § 110.10, as evidence that the clothing and protective gear worn at Pokphand's factory is required by regulation. This federal regulation requires that employees in contact with food conform to "hygienic practices while on duty to the extent necessary to protect against contamination" and goes on to list "methods for maintaining cleanliness." 21 C.F.R. § 110.10(b). These methods include "wearing outergarments . . . in a manner that protects against contamination," and "wearing . . . hairnets . . . or other effective hair restraints." *Id.*

■ Second, a genuine issue of material fact exists whether Davis's donning and doffing was performed primarily for the benefit of the employer. *Dunlop*, 527 F.2d at 401. "[T]hese activities prevent unnecessary workplace injury and contamination, both of which would inevitably impede" Pokphand's chicken processing. *Alvarez*, 339 F.3d at 903. Davis has established the existence of a genuine issue of material fact as to whether the Portal–to–Portal Act's § 254 exception applies, and thus summary judgment is not appropriate.[8]

---

5. Davis depo. at 177.

6. *Id.* at 177–76.

7. *Id.* at 86–87.

8. The court is not persuaded by two cases on which Pokphand relies heavily, *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir.1994), and *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556 (E.D.Tex.2001) (Hannah, J.). *IBP* held that time spent donning hard hats, earplugs, safety footwear, safety eyewear, and outergarments by employees at a beef and

pork processing plant was not compensable under the FLSA. 38 F.3d at 1125. *Anderson* held that time spent donning hairnets, ear plugs, rubber boots, gloves, aprons, and smocks by poultry plant employees was not compensable under the FLSA. 147 F.Supp.2d at 562.

Neither case was decided based on the 'preliminary activity' exception in the Portal–to–Portal Act; rather, the courts reasoned that these activities were not compensable because they were not 'work' within the meaning of the FLSA. Both courts defined 'work' as

### 3. *De Minimis*

██ Finally, Pokphand argues that summary judgment is appropriate on Davis's pre- and post-shift donning-and-doffing claims because the amount of time at issue is *de minimis*. When an FLSA § 207 claim "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515 (1946). To determine whether "otherwise compensable time is *de minimis*, [the court] will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir.1984). "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id.* at 1062.

██ The court finds that summary judgment is not appropriate on Davis's pre- and post-shift donning-and-doffing claim on a *de minimis* ground. First, Davis testified that she spends between 15 and 17 minutes total donning her hairnet, rubber gloves, smock, boots, and jumpsuit.[9] This obviously exceeds the ten-minute *de minimis* threshold cited in *Lindow*. 738 F.2d at 1062. Second, she notes that Pokphand already requires its employees to "clock-in" prior to starting their shift, which is evidence that administrative means of recording time spent donning and doffing clothes and protective gear exist. Third, the aggregate amount of time that she claims she spends on donning and doffing her clothing and protective gear would amount to at least an hour per week. Finally, her testimony suggests that she regularly spends this time donning and doffing her clothing and protective gear. Davis, therefore, has presented evidence creating a genuine issue of material fact as to whether the amount of time she spends donning and doffing her clothing and protective gear related to her job as a quality-assurance technician is *de minimis*.

### B. Pre–Shift Tasks

Plaintiffs also seek compensation for time spent filling out paperwork, washing, gathering supplies, calibrating equipment, and inspecting work areas. Davis alleges that, in her job as a quality-assurance technician, she calibrated scales and thermometers and inspected her work area prior to the start of her shift. She alleges

"physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer," *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944), and held that because donning and doffing the protective clothing takes little time, it is not "physical or mental exertion." 38 F.3d at 1125, 147 F.Supp.2d at 562.

There are two problems with this reasoning. First, *IBP* and *Anderson* apply an overly narrow interpretation of the *Muscoda* definition of work. "*Muscoda's* 'work' term includes even non-exertional acts." *Alvarez*, 339 F.3d at 902. Thus, even an activity which "takes seconds" and "requires very little concentration," *Anderson*, 147 F.Supp.2d at 560, can be work if it is "pursued necessarily and primarily for the benefit of the employer." *Muscoda*, 321 U.S. at 598, 64 S.Ct. at 698. Second, the courts' focus on the amount of time plaintiffs spent donning and doffing conflates the definitional issue of whether the activity is covered by the FLSA with the question of whether the *de minimis* exception applies.

9. Davis depo. at 88.

that, in her job as a chiller operator, she calibrates thermometers and gathers charts prior to the start of her shift. Green alleges that in her jobs, she has been required to do three to four minutes of paperwork and to wash her hands and equipment prior to the start of her shift. Pokphand moves for summary judgment on the grounds that (1) plaintiffs' activities are not "work" based on the existence of a custom of noncompensation for these activities, 29 U.S.C.A. § 207, (2) they are excluded preliminary activities, § 254, and (3) they are *de minimis*. For the reasons given below, the court will deny Pokphand's motions for summary judgment on plaintiffs' pre-shift tasks claims.

### 1. Custom or Practice of Noncompensation

Pokphand moves for summary judgment on Davis's claim regarding calibrating equipment and Green's claim regarding paperwork on the ground that the time spent completing those task is non-compensable as a matter of custom or practice. Unlike Pokphand's motion for summary judgment on plaintiffs' pre- and post-shift donning-and-doffing claims, there is no statute that excepts from the FLSA's coverage the activity at issue here. Rather, Pokphand is arguing that plaintiffs' activities are not "work" within the FLSA's coverage and that the existence of a custom of noncompensation for these activities is evidence that they are not "work." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944) ("Whether … time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. This involves scrutiny and construction of agreements between the particular parties … and of all the surrounding circumstances.") (citations omitted).

 The court holds that summary judgment is not appropriate on this ground because plaintiffs have provided evidence sufficient to create a genuine issue of material fact. First, the cases cited by Pokphand are clear that the existence of an agreement not to compensate for a particular activity is only one factor in determining whether that activity is work. *See, e.g., Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245, 1248 (5th Cir. 1986) ("the existence of an agreement may not be controlling in all cases"). Second, there is evidence that the activity at issue here fits within the Supreme Court's definition of "work" in *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944): "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." There is evidence that the preliminary tasks were required by Pokphand,[10] and there is evidence that they were primarily for its benefit.[11]

### 2. Preliminary Activity

 Pokphand does not argue that calibrating equipment is a preliminary activity, but it has moved for summary judgment on the ground that Green's time spent doing paperwork is a preliminary activity under the Portal–to–Portal Act. The court finds that Green's claim is not appropriate for summary judgment. As discussed above, under the Portal–to–Portal Act, "no employer shall be subject to any liability or punishment under the [FLSA] … on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for … activities which are preliminary to or postliminary to said

---

**10.** Davis depo. at 84, 97, 103–04.

**11.** *Id.* at 101–02.

principal activity or activities." 29 U.S.C.A. § 254(a)(2). Activities are compensable under the FLSA if they are "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner*, 350 U.S. at 256, 76 S.Ct. at 335. To be "integral and indispensable," an activity must be necessary to the business and performed primarily for the benefit of the employer. *Dunlop*, 527 F.2d at 401.

In *Dunlop*, the Fifth Circuit considered an FLSA claim brought by electricians who were required to arrive early at their shop to perform tasks including "filling out daily time sheets, material sheets, and supply and requisition sheets." 527 F.2d at 394. The court held that filling out such forms was an integral and indispensable part of the electricians' employment because it "enabled the employer to calculate his costs and to keep accurate records as required by ... the FLSA," *id.* at 400, and that, therefore, the time spent filling out the forms was not excluded from compensation under the FLSA by § 254, *id.* at 401. Similarly, Green states that, prior to her shift, she fills out forms related to her work in the processing area. A reasonable jury could, therefore, conclude that, like the paperwork at issue in *Dunlop*, Green's paperwork is "integral and indispensable." *Steiner*, 350 U.S. at 256, 76 S.Ct. at 335.

### 3. *De Minimis*

Finally, Pokphand argues that summary judgment is appropriate on plaintiffs' pre-shift tasks claims because the amount of time at issue is *de minimis*. As previously stated, to determine whether "otherwise compensable time is *de minimis*, [the court] will consider (1) the practical administrative difficulty of recording the addi-

tional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work," *Lindow*, 738 F.2d at 1063; "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable," *id.* at 1062.

 The court finds that Pokphand's *de minimis* defense does not warrant summary judgment on plaintiffs' pre-shift tasks claims. With respect to her quality-assurance-technician position, Davis has testified that calibrating the equipment and inspecting her work area took up to ten minutes per day.[12] Further, Pokphand ultimately decided to assign an employee to do the calibrating and to pay the employee for that work, which suggests that there is no administrative difficulty in accounting for time spent calibrating.[13] Additionally, there is evidence that Davis's pre-shift tasks were regular: She testified that she calibrated her equipment and inspected the work area every day.[14] With respect to her job as a chiller operator, Davis testified that she spends up to 15 minutes per day calibrating equipment and gathering supplies.[15] There is also evidence that these activities are regular: Davis testified that she gathers supplies everyday.[16]

### C. Break–Period Washing Up and Donning and Doffing

Plaintiffs seek compensation for time spent washing up and donning and doffing clothing and protective gear during their break periods. Davis alleges that in her job as a USDA inspector-helper, she spent ten to 15 minutes of her two 30–minute break periods washing up and donning and

**12.** Davis depo. at 98–99, 106.

**13.** *Id* at 94.

**14.** *Id.*

**15.** *Id.* at 146, 182–83.

**16.** *Id.* at 182.

doffing her clothing and protective gear. She alleges that in her job as a quality-assurance technician, she spent three to four minutes donning and doffing her clothing and protective gear. Green alleges that in her jobs, she spends four to five minutes donning and doffing clothing and protective gear. Pokphand has moved for summary judgment on the ground that plaintiffs' rest periods are "bona fide meal periods under the FLSA" or "noncompensable rest periods under the FLSA."[17] Pokphand has also moved for summary judgment on the ground that plaintiffs' break-period activities are not "work" within the meaning of the FLSA, based on the existence of a custom of noncompensation for these activities.[18] For the reasons given below, the court holds that summary judgment on plaintiffs' break-period claims is not proper.

### 1. Bona Fide Meal Periods and Noncompensable Rest Periods

■ Pokphand has moved for summary judgment as to plaintiffs' break-period claims on the theory that the two break periods are either noncompensable "rest periods" under 29 C.F.R. § 785.18, or "bona fide meal periods" under 29 C.F.R. § 785.19. In essence, Pokphand is arguing that, because plaintiffs' break periods, taken as a whole, are noncompensable under the regulations and case law, any time plaintiffs spent working during those break periods is not compensable. The court holds that summary judgment is not appropriate on either ground.

The authority relied upon by Pokphand does not support its claim. The regulations cited by Pokphand, 29 C.F.R. §§ 785.18 & 785.19, define compensable

"rest periods" and "bona fide meal periods," respectively. However, the regulations do not address the issue of whether the time an employee spends actually working during a designated break period must be compensated. Similarly, the cases cited by Pokphand all involve claims by employees that they should be compensated for the entire time they are on their breaks because they are required to work, or are subject to work responsibilities, during those breaks. *See, e.g., Kohlheim v. Glynn County*, 915 F.2d 1473, 1477 (11th Cir.1990) (firefighters' one-hour meal breaks are compensable work time because firefighters were required to remain at the station and were subject to emergency calls); *Bridges v. Amoco Polymers, Inc.*, 19 F.Supp.2d 1375, 1379 (N.D.Ga. 1997) (Bowen, C.J.) (factory employee's meal break is not compensable work time because employee does not have any significant work responsibilities during her break). The present case is distinguishable because plaintiffs do not seek compensation for the entire time they are on break; rather, they seek compensation only for the time they spent actually working during their breaks. Put another way, the regulations and cases relied upon by Pokphand are inapposite because they only speak to whether a break period as a whole should be characterized as compensable and not to whether time spent actually working during a break period should be compensable.

### 2. Custom or Practice of Noncompensation

Pokphand moves for summary judgment on plaintiffs' break-period claims on the ground that the time spent washing up and

---

**17.** Defendant Charoen Pokphand (USA), Inc.'s brief, etc., filed October 15, 2003, pp. 22, 24; Defendant Charoen Pokphand (USA), Inc.'s brief, etc., filed July 18, 2003, pp. 27, 30.

**18.** Pokphand has not argued that plaintiffs' break-period claims are *de minimis*.

donning and doffing clothing and protective gear during breaks is non-compensable as a custom or practice. As above, Pokphand is arguing that plaintiffs' activities are not "work" within the meaning of the FLSA and that the existence of a custom of noncompensation for these activities is evidence that they are not "work." *See Skidmore*, 323 U.S. at 136–37, 65 S.Ct. at 163.

■ The court holds that summary judgment is not appropriate on this theory because there is a genuine issue of material fact as to whether the break-period activity at issue is "work." Plaintiffs have offered evidence suggesting that the activities at issue here are within the Supreme Court's definition of "work" in *Muscoda*. 321 U.S. at 598, 64 S.Ct. at 703 ("physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer"). First, there is evidence that Pokphand requires plaintiffs to don and doff their clothing and protective gear prior to and after their breaks.[19] Second, there is evidence that the activities at issue are primarily for the benefit of Pokphand. For example, the break-period activities of Davis and Green benefit Pokphand by allowing it to comply with sanitation regulations. *See* 21 C.F.R. § 110.10. Thus, the court holds that summary judgment is not appropriate on this theory.

### D. Statute of Limitations

■ Pokphand moves for summary judgment on any claim of Davis's arising before September 4, 2000, and on any claim of Green's arising before December 18, 2000, on the ground that they are barred by the applicable statute of limitations. As a general rule, the FLSA has a two-year statute of limitations, but the statute of limitations is three years in the case of a "willful violation." 29 U.S.C.A. § 255. A "willful violation" occurs where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Davis filed her complaint on September 4, 2000, and Green filed her consent to opt in on December 18, 2000.

■ There is no evidence that Pokphand knew it was violating the FLSA, so the determinative issue is whether Pokphand showed reckless disregard for whether it was violating the statute. If Pokphand did not make an effort to determine if its policies violated the statute, that would be reckless. *LaPorte v. General Elect. Plastics*, 838 F.Supp. 549, 558 (M.D.Ala.1993) (De Ment, J.). Plaintiffs have presented evidence that they raised their concerns regarding pre-shift donning and doffing, pre-shift tasks, and break-period tasks with their union and with Pokphand.[20] This fact combined with the fact that Pokphand nonetheless continued with its practices amounts to some evidence that it did not investigate whether such practices violated the act. Thus, summary judgment is not appropriate on the statute-of-limitations ground.

### IV. CONCLUSION

For the above reasons, the court will grant Pokphand's motions for summary judgment as to: (1) Davis's claim for pre- and post-shift donning and doffing of clothing and protective gear related to her jobs as a USDA inspector-helper and chiller operator; and (2) Green's claim for pre- and post-shift donning and doffing of clothing and protective gear related to all her

---

**19.** Davis depo. at 56, 70–71.

**20.** Davis depo. at 79–80.

jobs. The court will deny summary judgment as to: (1) Davis's claim for pre- and post-shift donning and doffing of clothing and protective gear related to her job as a quality-assurance technician; (2) Davis and Green's claims for pre-shift tasks; and (3) Davis and Green's break-period claims. The court will also deny Pokphand's motion for summary judgment on Davis's claims arising out of activities occurring before September 4, 2000, and Pokphand's motion for summary judgment on Green's claims arising out of activities occurring before December 18, 2000.

Accordingly, it is ORDERED as follows:

(1) The motions for summary judgment filed by defendant Charoen Pokphand (USA), Inc. on July 18 and October 15, 2003 (Doc. Nos. 30 and 51), are granted as to:

(a) Plaintiff Jacqueline Davis's claim for pre- and post-shift donning and doffing of clothing and protective gear related to her jobs as a USDA inspector-helper and chiller operator; and

(b) Plaintiff Barbara Green's claim for pre- and post-shift donning and doffing of clothing and protective gear related to all her jobs.

(2) Said motions are denied in all other respects.